CALEB D. OWINGS, CORNELIUS H. OWINGS, FRANCIS R. GRIFFITH AND OTHERS, USE OF EDWARD GREEN, *vs.* JOHN B. EMERY AND CYRUS GAULT.—*December* 1848.

On the 11th of July 1840, *N O* leased to *E* and *G*, a granite quarry, called the *Fox Rock Quarry*, for six years, to commence 10th of November 1840. The lessees stipulated, to quarry and get out at least 40,000 cubic feet of stone, and to pay therefor one and-a-quarter cents per foot, amounting to $500, or to pay for that quantity annually, by quarterly instalments. Before the execution of this lease, on the 5th of July 1840, the lessor gave to the lessees a receipt, acknowledging that he had received from them $866, "to be returned them in granite stone to the amount of 69,300 feet, between the 10th of November 1840, and the 10th of November 1846, from my quarry, known by the name of *Fox Rock Quarry*." HELD:

1. That the true interpretation of the agreement between the parties, requires these two papers to be taken together as one contract; they are to be construed with mutual reference to each other, and the amount mentioned in the receipt must be considered as advanced, on account of rents to accrue under the lease.

2. The intent of the parties no doubt was, that these advances should be applied, chronologically, to the rents as they became due; but, upon proof that only a part had been so applied, and that the lessees had paid other moneys in liquidation of prior rents, it was HELD, that they were entitled to have such advances set off against rents accruing subsequent to the time when, by a chronological application, prior rents would have extinguished them.

A legal plaintiff on the record is not a competent witness, even though the party, for whose use the suit is brought, offers to deposit in court any sum which the court may direct, to cover the liability of such plantiff for costs.

APPEAL from *Baltimore* county court.

This was an action of *debt*, brought by the appellants against the appellees, to recover the sum of $375, the amount of three quarters of a year's rent, accruing under a lease, of a certain quarry, from *Nicholas Owings*, under whom the plaintiffs claim, to the appellees, dated the 11th of June 1840.

This lease, upon which the plaintiffs counted, will be found set out in full, in the case of *Owings and Griffith vs. Emery and Gault*, 6 *Gill*, 261. The material parts of it, are also recited in the opinion of the court in this case, delivered by his honor, *Judge Frick*.

The defendants pleaded *nil debet*, with leave to give in evidence any special matter, which might be pleaded in bar of the action, upon notice, &c.

1ST EXCEPTION. At the trial, the plaintiffs read in evidence the lease, and the will of *Nicholas Owings*, executed on the 7th of July 1841, by which he devised the reversion in said quarry, to his son *Beale*, during his natural life, and at his death, to his children lawfully begotten, with power to said *Beale*, in case he should die without issue, to leave said reversion by last will and testament, to any or all of the children or grand-children of said *Nicholas*, at his pleasure. This will also contained the following clause: "It is my will and desire, that the rents arising from the quarry, known by the name of *Fox Rock Quarry*, be applied to discharge the incumbrances on the same." (This clause of the will, this court, in the case of *Emery and Gault vs. Cornelius H., and Caleb D. Owings, Adm'rs of Beale Owings*, 6 *Gill*, 191, being an action upon the same lease, decided, did not separate the rents from the reversion,) and

proved that said *Nicholas*, at the time of his death, left five children, the legal plaintiffs in this action, and said *Beale Owings* who died in July 1843, unmarried, without issue, and intestate. The defendants then, under the leave annexed to their plea, proved notice to the plaintiffs, that they would give in evidence, and insist, that the sum of $866, advanced by the defendants to *Nicholas Owings*, or for his use, to enable him to settle with *Noah Worthington*, on or about the 5th of June 1840, was advanced and paid on account of the rent thereafter to accrue, and now claimed in this action, under the lease mentioned in the declaration, and should insist, that this sum ought to be credited upon this lease, (whatever may be the amount,) at the time this action was instituted, either as payment, or by way of off-set.

And then proved by *Mathew G. Emery*, that prior to the execution of said lease, the said *Nicholas Owings* told him, on one occasion, that he would be under the necessity of paying a certain *Noah Worthington*, the sum of $866, which he could not raise, unless the defendants would advance it, on the rent of the *Fox Rock Quarry;* that a week or two afterwards, and shortly after the execution of said lease, the said *Nicholas* told him, that the defendants had advanced the aforesaid amount to him, and he would be unfortunate, as it would take all the resources of his quarry for a year or so, before he could get any rent. The plaintiffs then read to the jury the receipt of *Nicholas Owings*, which is recited in the opinion of this court, and the defendants claiming to apply the sum of money therein mentioned, as an off-set against the rents sued for in this action, the plaintiffs then produced and proved an assignment of these rents, under seal, from the legal plaintiffs to *Edward Green*, for whose use the suit was brought, executed on the 1st of April 1844.

And further offered, on behalf of said *Green*, to pay into court any sum of money which the court might direct, to cover the legal liability of said nominal plaintiffs, for the costs of this suit, as a deposit to meet said costs, in the event of a verdict for the defendants; and then said *Green* produced *Caleb D. Owings*, one of the nominal plaintiffs, and offered to swear

him as a witness, as soon as the court would decide what sum should be paid into court by *Green*, to release the liability of said *Caleb*, for costs as aforesaid, and so soon as said money should be actually paid into court, or to such person as the court might direct: which payment said *Green* offered himself then and there ready to make, stating by his counsel, that said *Caleb* was offered as a witness to disprove the testimony of *M. G. Emery*, aforesaid; and said *Caleb*, being in court, assents to be examined as a witness for the purpose aforesaid, or any other purpose. But the court (LE GRAND, J.,) refused to determine what amount should be paid into court by said *Green*, or to allow said *Caleb* to be examined, as proposed, because he was a party to the suit, and incompetent, by reason thereof, to testify. The plaintiffs excepted, but this exception was abandoned in argument in this court.

2ND EXCEPTION. The plaintiffs then prayed the court to instruct the jury, that upon the evidence aforesaid, if believed by them, the said $866 must be applied chronologically to extinguish the rents as they accrued, under the lease, and that the defendants could only obtain a credit for so much, (if any,) of said sum, as the jury might find remained unextinguished by rents, accruing anterior to the rents embraced in this suit. But the court refused to grant this instruction, and instructed the jury, that it was at their election to apply the said sum to the rents, as they accrued under said lease, chronologically or not; and that the jury might, if they thought proper. apply so much of said sum as was necessary to defeat the whole claim of the plaintiffs in this action, it being admitted that only $394 of said sum of $866, had been already credited or applied, on account of said rents, by the verdicts of juries, in two suits brought in this court, by different plaintiffs, against defendants, for rents accruing under the lease in evidence, there being rents for three-quarters of a year under said lease, not embraced in either of the present or former suits. The plaintiffs excepted.

3RD EXCEPTION. The defendants, upon the whole evidence, then prayed the court to instruct the jury, that if they find, that the receipt offered by the plaintiffs, of the 5th June 1840, for $866, was given by *Nicholas Owings*, under an

agreement, that the same should be applied to the payment of rents, thereafter to become due from defendants to said *Nicholas*, from the *Fox Rock Quarry*, under the lease of the 11th June 1840, and that the said sum of $866, has not been returned to said defendants, by said *Nicholas*, or those claiming under him, or in any way satisfied, that then they must allow said receipt, or so much thereof as may be now due, as an offset to the plaintiff's demand, which instruction the court granted, and the plaintiffs excepted. Judgment of *non pros.* on verdict for the defendants being entered, the plaintiffs appealed to this court. The statement of evidence, in the bills of exception, and prayers, was assented to by the counsel for the defendants.

The cause was argued before SPENCE, MAGRUDER, MARTIN and FRICK J.,

By BRENT for the appellants, and
By HINKLEY for the appellees.

FRICK, J., delivered the opinion of this court.

In this case, the action is instituted to recover the amount of three-quarters rent, accruing under a lease from *Nicholas Owings*, to the appellees. The appellants claim title to the property under said *Nicholas Owings*, the original lessor, deceased, and no question is raised, of their right to sue in this action.

The lease, in evidence, bears date the 11th of July 1840, to commence on the 10th of November 1840, and to endure for the term of six years; the lessees to pay for the use of the premises, and the stone to be quarried and got out of them, one-and-a-quarter cent for every cubic foot so quarried and got out, binding themselves so to quarry and get out at least 40,000 cubic feet, amounting to $500, or to pay for that quantity annually, by quarterly instalments; and for all over and exceeding that quantity, to pay additionally at the same rate aforesaid.

On the 5th of July 1840, (six days preceding the execution of the lease,) a receipt in the following terms was passed from *Nicholas Owings* to the appellees.

"BALTIMORE COUNTY, *July 5th*, 1840.

Received of *Messrs. Emery & Gault*, eight hundred and sixty-six dollars, to be returned them in granite stone to the amount of 69.300 feet, without interest, between the 10th of November 1840, and the 10th of November 1846: they being at the expense of quarrying and transporting the same from my quarry, known by the name of *Fox Rock Quarry*.

NICHOLAS OWINGS."

And under leave to give in evidence any special matter that might be pleaded in bar; this receipt is produced by the appellees, as a set-off or payment of the rent sought to be recovered in this action. An attempt has been made to give to this receipt a construction independent of the lease. But it must be manifest that this agreement between the parties was a preparatory step to the lease, afterwards executed within a few days; and that at the time of the advance of the said sum of money to *Owings*, the lease of the quarry was in contemplation. Both instruments correspond in their essential stipulations. They are made conterminous with each other; both to begin and to end on one and the same day; and the $866 to be returned in 69.300 feet of stone, is at the precise rate of one-and-a-quarter cent per foot. The receipt is open to no rational interpretation, unless it can be made to refer to the subsequent lease. The lease effectually neutralizes any action of the appellees under the receipt. It compels them to take out 40,000 feet of stone or pay for that quantity, and for every foot of stone over that computation, they are also required to pay at the same rate. And unless they are supposed to be required to pay double for all over 40,000 feet, the receipt is merged in the lease, and it must be intended that the stone referred to in the receipt, was to be quarried and got out, under the lease. That instrument covers the whole term set out in the receipt; and the condition in it, is that no stone can be taken from the quarry, but what must be paid for under the terms of the lease. The two agreements cannot therefore stand independent, but must be construed in reference to each other. And the appellees insist in their notice to the appellants at the trial below, that this advance was made on account of the rents thereafter to accrue

under the lease, and claim its application in part, to the credit of the rent in controversy in the present action.

The appellants, on the contrary, deny that there can be any legal appropriation of any part of these advances to the liquidation of the rents in the present suit.

Before the date of the writ in this case, claiming rent from the 10th day of May 1843, two years and a half of prior rents had accrued under the lease, to the parties in interest, preceding these plantiffs, and if these advances, (as they insist they ought,) had been applied in liquidation of these antecedent rents, they must have absorbed more than the whole sum, and would leave no balance to be set-off against the present claim.

On this ground they prayed the court to instruct the jury, "that the said sum of $866, must be applied chronologically, to extinguish the rents as they accrued under said lease; and that the defendants could only obtain a credit for so much, (if any,) of the said sum of money as the jury might find remained unextinguished by the rents accruing under said lease, anterior to the rents embraced in this suit."

But the court refused to grant this instruction, but directed the jury, "that it was at their election to apply the said sum of money to the rents as they accrued under said lease, chronologically or not, and that the jury might, if they thought proper, apply so much of said sum as was necessary to defeat the whole claim of the plaintiffs, *it being admitted*, that only $394 of the said sum of $866 had been already applied or credited on account of said rents, by the verdicts of juries, in two suits brought in this court by different plaintiffs, against the defendants, for rents accruing under the lease in evidence, there being rents for three-quarters of a year under said lease, not embraced in either of the present or former suits. And upon the further prayer of the defendants, also instructed the jury, "that if they find from the evidence, that the receipt offered in evidence by the plaintiff of the 5th of June 1840, for the sum of $866, was given by *Nicholas Owings*, under an agreement that the same should be applied to the payments of rents thereafter to become due from the defendants to said *Owings*, from the *Fox Rock Quarry*, under the lease of the 11th of June 1840, and that the

said sum of $866, has not been returned to said defendants by *Nicholas Owings*, or those claiming under him, or in any way satisfied, that then they *must* allow said receipt, or so much thereof as may be now due as an off-set to the plaintiff's demand.''

The propriety of these instructions is submitted for the decision of this court.

We have shown that the true interpretation of the agreement between the parties, requires that the two papers must be taken together as one contract, and are to be construed with mutual reference to each other; that the amount mentioned in the receipt must be considered as advanced on account of rents to accrue under the lease.

Was the court below correct in saying, that the jury might apply them or not, as they thought proper, to the liquidation of the present rent, so as to defeat the whole claim of the appellants; and that they were not bound to apply them chronologically, in the order in which they became due?

This latter mode of application was certainly in the view of *Nicholas Owings*, when the money was advanced. For he states to *Matthew G. Emery*, the witness produced, ''that it would take all the resources of his quarry for a year or so, before he could get any rent.'' This evidence was admitted without objection, and serves to explain, not to contradict the receipt, or control its written stipulations. It presents his own view of the time and manner in which the advances were to be liquidated. And under his own interpetration of the agreement, the rents thus applied would, before the time the present action accrued, have extinguished the whole sum: more than two years having expired from the date of the lease. It is also the probable and natural presumption, that the defendants, would so seek to apply their advances, and deduct the sum from the first rents due by them under the lease. With this relation between the parties connecting *Emery's* testimony with the receipt of *Nicholas Owings*, it would seem in the absence of any other conflicting evidence, to be the proper view of the case, and the correct instruction to the jury, that if they believed *Emery*, the advances were to be applied chronologically to the

rents in the order in which they became due, until the sum advanced was absorbed. So applied, the amount of the receipt would be liquidated before it reached the present cause of action, and the plaintiff would have been entitled to recover the rent now in dispute.

But it appears, there was other evidence in the cause, to show that the amount of these advances was not actually exhausted, when the present rents accrued. That evidence is stated as the foundation of the instruction of the court, upon the appellant's second prayer, as an admission of the parties, that, "only $394 of the $866, had been before credited or applied, upon account of the said rents," and by agreement of counsel, was submitted and argued, as part of the case presented to the court.

From this admission it results, that the advances had not been strictly applied to the preceding rents, in their chronological order, but that other moneys must have been paid by the defendants, in the liquidation of prior rents, postponing the application of the advances, or part of them, to the present period of the lease. It was for the advantage of the appellees, that they should have been sooner applied. Yet a portion still remains due, to show that they must have waived the application, and satisfied a portion of the antecedent rents, in some other form. Why, then, should the appellees not have the benefit of the application now, when it was manifestly an indulgence to the lessors, that they were not sooner applied, under *Owings'* own interpretation of his contract, in the order in which the first rents accrued under the lease ?

The appellants admit, that the whole amount is not refunded from the rents. When is the period assigned for the final liquidation of these advances? If not now set off and extinguished, according to the understanding of the lessor, at what subsequent point of the lease are they to be adjusted?

In view of the admissions in the case then, the court below were correct in refusing to instruct the jury, that this amount of $866, had been legally absorbed in the antecedent rents, which they would virtually have said, in granting the appellant's second prayer; and they properly instructed them, that if

they find, from the evidence, that the amount of said receipt has not been returned, or in any way satisfied, by *Nicholas Owings*, or those claiming under him, they must allow the said receipt, or so much as may be found due, as an off-set to the appellant's demand.

This mode of application of the money here in question, is not now, for the first time, adjudicated. It was before this court, presented in the same form, at December term 1847, by these appellees, against the executors of *Beale Owings*. The third prayer of the appellees in this record, the same as there in form and substance, was, by this court, affirmed to be the proper direction to the jury; and upon the admission here, that these advances are not yet exhausted, is the proper instruction in the present case. The instruction asked by the appellants assumes, that all the rents that did accrue, under the lease antecedent to that claimed in this suit, must *legally and of necessity* have been satisfied out of these advances, and in no other way. How could they so say, that this whole amount had been thus applied and exhausted, when the antecedent rents might have been, and must have been satisfied, in some other way, if it be true, as admitted, that only a portion had been applied to the large amount of rents which had fallen due, before the claim for which the present suit is brought?

Some further objections have been urged, to the two instructions of the court, on the ground of inconsistency; the first, submitting to the jury, that if they find the advances, or any portion of them, are still unpaid, they may, at their election, set them off or not, against the present rent, the other directing, without qualification, that they *must* so apply them. Whether it was proper to submit it, under the evidence admitted, to the option of the jury, to determine the right of set-off, it is not now necessary to examine. The verdict is in conformity with the proposition and instruction upon the defendants' (the appellees') prayer, and under the case as presented to this court, the judgment of the court below must be *affirmed*.

Any reference to the first exception of the appellants is necessarily omitted, because in the argument of the cause it was properly abandoned.

**JUDGMENT AFFIRMED.**