# WILLIAM O. NELSON *vs.* GEORGE P. WILLEY, et al.

*Memorandum of Agreement—Reference in One Writing to Another Containing All of the Terms Agreed Upon—Evidence to Identify.*

When a writing signed by the party to be charged does not itself contain the terms of the agreement but refers to and recognizes, another writing which does contain them, then parol evidence is admissible to identify the writing referred to and thus establish a sufficient memorandum of the contract.

A bond recited that the obligee had "agreed to make certain advances of money" to one of the obligors, in connection with a canning business, and was conditioned for the repayment of the said advances. In an action on the bond the plaintiff (the obligee) offered in evidence a written agreement made between him and one of the obligors, bearing the same date as the bond, and also testimony to show that the advances were made and that under the agreement certain sums were due to the plaintiff. *Held,* that although the bond sued on does not in express terms refer to the agreement by its date, or otherwise identify it, yet, since it does refer to an agreement, parol evidence is admissible to identify the agreement referred to in the bond as being the one which was offered in evidence by the plaintiff, and to show that the plaintiff had made advances under that agreement.

Appeal from the Circuit Court for Howard County (THOMAS, J.) The agreement referred to in the opinion of the Court is as follows :

This agreement made this 8th day of April, in the year 1897, by and between George P. Willey, hereinafter styled the principal, and William O. Nelson, hereinafter styled the agent :

Witnesseth : Whereas the principal is about to engage in the business of manufacturing canned goods at his factory, situate at Patuxent, Anne Arundel County, Maryland, and desires to constitute the agent as his sole representative for the sale of the manufactured products ; Now, therefore, the said principal and agent hereby mutually covenant and agree as follows :

1. That the principal shall can fruits and vegetables at his said factory in a first-class manner, and in as large quantities as possible consistently with the capacity of his factory and the demands of the market, paying all the expense of said

factory and the conduct of the said business; and that he shall give the agent free access to the said factory at all times, free supervision of all books and papers relating to the said business, including his correspondence, and a full report of the condition of the said business whenever the agent shall see fit to demand it; and that he shall also give the agent an advisory position in the management of the said business, if the said agent shall desire.

2. That the agent shall purchase for the principal, at the beginning of the ensuing canning season, that is to say, on or before the first day of August, 1897, the following goods, to wit: Twenty-five pounds of tomato seeds, fifty bushels of sugar corn seed, ten bushels of lima bean seed, ten bushels of red valentine bean seed, one hundred tons of fertilizer, and one thousand dollars worth of stock for the use of the factory store, the said goods to be bought for account of the principal and in his name, and delivered at Patuxent, Maryland, the agent making advances if necessary, to pay for the said goods and their freight, and that thereafter the agent shall purchase and forward to Patuxent such goods or stock as may be necessary to meet the demands of the said factory, and such cans, solder, acid cases and labels as may be needed, and to make advances of cash if needed by the principal, provided however and it is hereby specially agreed, that the aggregate amount advanced by the agent as herein provided, whether for the purchase of goods or in cash, shall not exceed at any one time, the net cost of the canned goods manufactured up to that time, and in no case shall be more than sixty-six per cent of the market or selling value of the said goods:

3. That the principal shall transfer to the agent by means of warehouse receipts the title to the said goods as fast as they are manufactured, for the purpose of securing the said advances, and shall give to the agent the exclusive control of the same, and the exclusive right to sell the product of his factory at prices in the discretion of the agent; that the principal shall pay to the agent a commission of five per cent on the price of all goods purchased by the said agent on account of the principal, five per cent on the price of all manufactured goods sold by the agent, and six per cent *per annum* upon all sums of money advanced by the agent, under the terms of this agreement. The agent on his part agrees to sell the canned goods manufactured by the principal as rapidly as the demands of the market will allow, and to pay over to the principal all monies collected by him from such sales, after deducting the

commissions herein specified, and the amount of all bills contracted for by him on behalf of the principal as herein provided, such payment to be made to the principal only upon settlement of accounts at the end of each canning season.

4. That the goods purchased by the agent and forwarded by him to Patuxent for the use of the said factory shall be exchanged only for labor or materials used in producing the said canned goods, and shall at all times be represented by checks given out by the principal, for labor done, or material furnished to the said factory, which checks shall be forwarded weekly to the agent as vouchers.

5. That the principal shall give to the agent a bond of indemnity signed by the principal and his wife jointly for the faithful performance of his part of this agreement and shall have the improvments on property belonging to the principal or to his said wife insured for the agent's benefit and to the agent's satisfaction against possible losses by fire.

Witness the hands and seals of the said parties the day and year above written.

> Geo. P. Willey, [Seal.]
> Wm. O. Nelson, [Seal.]

Test:   Wm. H. Buckler.

The cause was argued before McSherry, C. J., Briscoe, Boyd, Pearce, Schmucker and Jones, JJ.

*R. R. Boarman* (with whom was *J. J. Lindsay* on the brief), for the appellant.

The agreement and the bond constitute but one and the same contract, and must be construed together as one executed and consummated agreement, and the bond is a security for the money advanced and goods furnished by the plaintiff to George P. Willey. The bond refers to the furnishing of goods by the plaintiff and the advance of money to George P. Willey; it refers to the contract entered into by the plaintiff with George P. Willey for the purpose of canning goods. The condition is that the obligees are responsible for the money advanced and the goods so furnished. Both papers were executed of even date and delivered at the same time. The intention of the parties is sufficiently plain, and the intent of the parties must govern the contract. The

rational interpretation is that the bond refers to the agreement.

The agreement required this bond to be given by Willey and wife, and that the bond was given. George P. Willey is worth nothing and if the defendants succeed they will have gotten over $4,000 of the plaintiff's money, without any redress. The Court clearly erred in taking from the jury the agreement and not permitting it to go to the jury, in connection with the bond. *Marvin* v. *Brewer*, 30 Md. 247; *Diven, &c.*, v. *Emery, &c.*, 7 Gill, 309; *Adams* v. *Hill*, 16 Maine, 215; *Rogers* v. *Kneelam*, 13 Wendell, 114; *Sibly* v. *Holden*, 10 Pickering, 302; *Hunt* v. *Shermore*, 5 Pickering, 395.

*James R. Brashears* (with whom was *John G. Rogers* on the brief ), for the appellees.

1. The Circuit Court was correct in striking out the agreement offered by the plaintiff, in evidence. (*a*) Because it was not a part of the bond sued on in this case. (*b*) Because the bond sued on makes no reference to said agreement. (*c*) Because the parties to said agreement of April 8th, 1897, and those to the bond of April 8th, 1897, the cause of action, are not the same. (*d*) Because the parties defendant, not being the *original* parties to the agreement of April 8th, 1897, offered in evidence by the plaintiff in this suit, the said agreement was inadmissible. *Taylor on Evidence*, p. 977, sec. 1148, (8th English ed.) 1 *Greenleaf on Ev.*, p. 355, sec. 300, (13th ed.) *Morgan* v. *Morgan*, 4 Gill & Johnson, 395; *Beall* v. *Greenwade's Ad'mrs.*, 9 Md. 185; *Howard County* v. *Hill*, 88 Md. 111.

PEARCE, J., delivered the opinion of the Court.

This suit was brought by William O. Nelson against George P. Willey and Alice E. Willey, his wife, upon a bond in the penalty of $10,000 executed by them to him, and bearing date April 8th, 1897. The recital and condition of this bond is as follows: "Whereas the said George P. Willey is about to engage in the canning business, and the said William O. Nelson has agreed to make certain advances of money to him in

connection with said business, as well as to pay, if necessary, for certain goods to be used by the said Willey in connection with the same;

"Now, therefore, the condition of this obligation is such that if the said George P. Willey shall well and truly repay to the said William O. Nelson the said advances with interest, and shall also reimburse to him the sums of money expended in the purchase of goods as aforesaid, then this obligation to be void; otherwise it is to remain in full force and effect in law."

The declaration set forth a *verbatim* copy of an agreement under seal entered into between the said Nelson and George P. Willey, of even date with said bond, in which the said Willey was styled the principal and the said Nelson was styled the agent. We shall request the reporter to set out the agreement in full in reporting the case. This agreement recites that whereas the principal is about to engage in the business of manufacturing canned goods at his factory situate at Patuxent, Anne Arundel County, Maryland, and desires to constitute the agent as his sole representative for the sale of his manufactured products; "Now, therefore, the said principal and agent hereby mutually covenant and agree as follows:" Then follow a number of detailed stipulations, the substance of which may thus be condensed: 1st. That the principal shall can fruits and vegetables in as large quantities as the capacity of his factory will permit; 2nd. That the agent should purchase for the principal on or before August 1st, 1897, certain quantities of tomato, sugar corn, and bean seed; one hundred tons of fertilizer, and $1,000 worth of stock for the use of the factory store, all to be bought for account of the principal and in his name, and to be delivered at Patuxent; and thereafter to purchase and forward such goods, and make such advances as may be necessary to conduct said business for the season of 1897, provided the aggregate amount so furnished and advanced shall not at any one time exceed the net cost of canned goods then manufactured, nor more than 66 per cent of the market value thereof. 3rd. That as fast as the canned goods are manufactured the title shall be transferred

to the agent by warehouse receipts to secure advances; that
the agent shall have the exclusive right to sell the manufac-
tured goods; that from the proceeds of sale he shall deduct
all advances and the cost of all goods furnished, and shall pay
the surplus to the principal; 4th. Not material to this case;
5th. "That the principal shall give to the agent a bond of in-
demnity, signed by the principal and his wife jointly, for the
faithful performance of his part of said agreement, and shall
have the improvements on the property belonging to the prin-
cipal, *or to his said wife*, insured for the agent's benefit, and to
the agent's satisfaction against possible losses by fire."

The declaration further set forth that Willey and wife, in
accordance with said agreement, and at the same time it was
made, executed the above-mentioned bond for the faithful per-
formance of said agreement ; also that Willey did engage in
canning in said county in pursuance of said agreement ; that
Nelson did make him large advances and pay for large
amounts of goods furnished him, all of which were used in
carrying on the business under said agreement, and amount-
to $15,368.23, and that Nelson had received from Willey under
said agreement, $8,892.15, showing a balance due under said
agreement $6,476.08, and there was filed with the declaration,
an account styled a bill of particulars, showing in detail all
the charges and credits, and the balance due under said agree-
ment.

The defendants pleaded, 1st, *non est factum ;* 2nd, payment
and satisfaction ; 3rd, that plaintiff prevented performance by
defendant of his contract ; 4th, that plaintiff broke and repu-
diated his contract with these defendants ; 5th, that defend-
ants had performed their part of said contract mentioned in
the declaration.

Issues were then joined, and at the trial the bond was put
in evidence, and the plaintiff offered the agreement mentioned
which was admitted subject to exception. The plaintiff him-
self testified, subject to exception, that he purchased the goods
and advanced the money mentioned in the bill of particulars,
and that the agreement and the bond were made on the same

day, and it was proved by another witness that a large quantity of such goods as were described in the bill of particulars was received at Willey's canning house during the season of 1897. One of the firm of Kirwan and Tyler, can makers, testified that they sold Nelson that season about 6,000 cases of cans which were shipped to Willey, and Mr. Shriner, a canned goods broker, testified that he sold for Nelson and Willey a large part of the goods canned by Willey in the summer of 1897, and that the goods were not in condition.

The plaintiff then closed his case, and the defendants moved to strike out the agreement of April 8th, 1897, and all testimony of Nelson in reference to the agreement, and to the purchase of goods and the advance of money thereunder. The Court granted this motion and the first exception was taken to this ruling.

The defendants then offered the following prayer : "The defendant prays the Court to instruct the jury that under the pleadings in this case, the plaintiff has offered no evidence legally sufficient to entitle him to recover, and their verdict must be for the defendants ;" which the Court granted, and the second exception was taken to this ruling.

It was not distinctly stated, either at the argument or in the briefs, upon what ground the Court struck out the agreement of April 8th, 1897, and the testimony of Nelson in reference to the money advanced and the goods furnished thereunder, but we infer from the appellee's brief that it was upon the view that the bond did not refer in express terms to the agreement so as to identify it, and that parol testimony was not admissible to supply the connection. But we cannot agree with this view. Where the parties have put their contract in writing, it is true as stated in *Taylor's Law of Evidence*, sec. 1026, that "the entire contract must be collected from the writings, verbal testimony not being admissible to supply any defects or omissions in the written evidence." But it is also true, as stated in the same section, that "it will suffice if the contract can be plainly made out in all its terms from any writings of the party or even from his correspondence. Nay, a signed letter

will be sufficient, though it does not contain in itself any one
of the terms of the agreement, if it distinctly refers to and rec-
ognizes *any writing which does contain them all*, for in such
case the well-known maxim of the law, *verba illata in esse vi-
dentur* will be held to apply."

In *Cave* v *Hastings*, L. R. 7 Q. B. Div. 128, the Court
said : "The only document in this case that was signed by the
defendant was the letter of the 11th of February, which does
not in itself contain the terms of the agreement. Now I adopt
the statement of the law on this subject contained in *Dobell* v.
*Hutchinson*, 3 A. & E. 355. LORD DENMAN, C. J., there
says : 'The cases on this subject are not at first sight uniform;
but on examination it will be found that they establish this
principle, that when a contract in writing or note exists which
binds one party, *any subsequent* note in writing signed by the
other is sufficient to bind him, provided it either contains in
itself the terms of the contract, or refers to any writing which
contains them. The letter in this case refers to 'our arrange-
ment.' It was argued that that might refer to some other
and different parol arrangement, but it seems to us that this
reference to the former document is sufficient, in accordance
with the principle laid down in *Ridgway* v. *Wharton*, 6 H. L.
C. 238. In that case, instructions were referred to, and it
was held that parol evidence might be given to identify the
instructions referred to with certain instructions in writing."

The principle applied in *Ridgway* v. *Wharton*, is very clearly
stated in *Taylor's Law on Evidence*, sec. 1024, where it is
stated that if one agrees in writing to liquidate the *debt* of an-
other, the memorandum need not specify the amount of the
debt. The author says: "If it be contended that the memo-
randum is insufficient as two or more debts may be owing
from a third party, and it does not appear to which of these
the writing applies, the answer is clear;—namely that the
Court will not presume the existence of more debts than one,
but will call upon the party impeaching the document to fur-
nish proof of that fact."

Here the bond does not in express terms refer to the

agreement by its date, or otherwise in itself identify it, but it does expressly refer to *an agreement* by Nelson to make certain advances of money to him in connection with the business of canning in which he was about to engage, and to pay, if necessary, for certain goods to be used by him in connection with said business. An agreement in writing, corresponding in its terms with the recital of the bond, and bearing even date therewith, was offered in evidence, and upon the principle stated in *Taylor's Law of Evidence*, and in *Cave* v. *Hastings, supra*, it should have been admitted. The Court will not presume the existence of more than one agreement, but will call on defendant to furnish proof that there was some other agreement to which the bond did or might refer. And upon the same authority parol testimony was properly admissible here to identify the agreement referred to in the bond, as the same offered in evidence.

These principles were recognized and applied in *Owings* v. *Emery & Gault*, 7 Gill, 410. In that case Owings, on July 11th, 1840, leased to Emery & Gault his Fox Rock Quarry for six years, to commence November 10th, 1840; the lessees to get out yearly 40,000 cubic feet of stone at one and a quarter cents per foot, or pay for that amount in quarterly instalments. On July 5th, before the execution of the lease, the lessor gave the lessees a receipt stating that he had received from them $866 "to be returned to them in granite stone to the amount of 169,300 feet between November 1st, 1840, and November 10th, 1846, from my quarry, known by the name of Fox Rock Quarry." The Court held that the two papers must be taken together as one contract; must be construed with mutual reference to each other, and that the amount mentioned in the receipt must be considered as advanced on account of rents to accrue under the lease, saying: "The receipt is open to no rational interpretation unless it can be made to refer to the subsequent lease." In this case we may say with equal confidence, that the bond is open to no rational interpretation unless it can be made to refer to the agreement of even date corresponding in its essential stipulations with the recitals of the bond.

. The case of *Marvin* v. *Brewer*, 30 Md. 257, is a very analogous case, though there the bond referred to the agreement by its date, without however containing in itself any one of the terms of the agreement, and without even stating the amount secured by the bond, which omission the Court said was supplied by reference to the agreement, and held that "the two papers constituted in fact one executed and consummated agreement" and that they "effectuated the obvious intention of the parties."

The reference in this bond to the essential stipulations of the agreement, in connection with the fact that the two papers were concurrently executed, are quite as satisfactory identification of the agreement, as was the express reference to the date of the agreement in *Marvin* v. *Brewer*.

For these reasons we are of opinion that the Court erred in striking out the agreement of April 8th, 1897, and the testimony of Nelson in reference thereto, and it necessarily follows that there was error in granting the defendant's prayer.

> *Judgment reversed with costs to the appellant above and below and new trial awarded.*